

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

January 10, 1994

Mr. S. E. Seely
El Paso County Auditor
Room 406, County Courthouse Building
500 East San Antonio Street
El Paso, Texas 79901-2421

Opinion No. DM-282

Re: Whether a county must maintain a special and separate account for cash bail bond funds that the county receives pursuant to article 17.02 of the Code of Criminal Procedure and related questions (RQ-565)

Dear Mr. Seely:

You ask the following questions:

> 1. Under the Texas Code of Criminal Procedure[] Art. 17.02, the County receives cash bail bond funds. Must the County maintain a special and separate checking account for these cash bail bond funds?

> 2. If your answer to the above question is negative, then can the cash bail bond funds be deposited directly into the County Treasury, escrowed in the general fund and invested from the general fund's escrow account? If so, can the resulting interest income be credited to the County's general fund? If not, then what would be the proper disposition of the interest income?

> 3. If your answer to question number 1 is affirmative, can the cash bail bond funds be invested from the special and separate checking account? If so, can the interest income generated by the investments be deposited into the County Treasury and credited to the County's general fund interest income account? If the interest income cannot be deposited into the County Treasury and credited to the general fund, then what would be the proper disposition of the interest income?

> 4. The County deposits inmate monies in a trust fund in accordance with the Texas Government Code § 50[1].014.[1] Can the County invest these inmate trust fund monies under its control and use the resulting interest income in its general fund? [Footnote added.]

---

[1] You cite section 500.014 of the Government Code. The legislature renumbered section 500.014 as section 501.014 of the Government Code in 1991. *See* Acts 1991, 72d Leg., ch. 16, § 10.01(a), at 312.

Your first three questions pertain to the receipt of cash bail bond funds by the County of El Paso (the "county"). Section 17.02 of the Code of Criminal Procedure, which you cite, provides as follows:

> A "bail[2] bond" is a written undertaking entered into by the defendant and his sureties for the appearance of the principal therein before some court or magistrate to answer a criminal accusation; provided, however, that the defendant upon execution of such bail bond may deposit with the custodian of funds of the court in which the prosecution is pending current money of the United States in the amount of the bond in lieu of having sureties signing the same. Any cash funds deposited under this Article shall be receipted for by the officer receiving the same and shall be refunded to the defendant if and when the defendant complies with the conditions of his bond, and upon order of the court. [Footnote added.]

*See also* 22 TEX. JUR. 3d *Criminal Law* § 2170, at 397 (1982). In Attorney General Opinion JM-1162 (1990) at 2 this office considered questions regarding the status of trust funds that a district clerk holds in trust until final disposition by a court. Our resolution of the issues before us in that opinion controls our resolution of the questions you ask regarding the receipt of cash in lieu of bail bonds.

This office concluded in Attorney General Opinion JM-1162 that cash paid in lieu of a bail bond is to be held in trust pursuant to chapter 117 of the Local Government Code. Attorney General Opinion JM-1162 at 2. For purposes of chapter 117 of the Local Government Code, a "trust fund"

> is an equitable obligation under which the trustee is required to deal with the trust property for the benefit of the beneficiaries who have a vested interest in the trust funds. Any funds fitting this definition are trust funds and, if in the possession of the county or district clerk, may be deposited in the county depository for trust funds.
>
> . . . .
>
> We believe that any money deposited in court to satisfy the result of a legal proceeding or to await the result of a legal proceeding falls within the scope of [Local Government Code sections 117.052 and 117.053].

*Id.* at 1 (quoting Attorney General Opinion H-183 (1973) at 4, 6).

---

[2] "Bail" is the security a person accused of committing a crime gives that he or she "will appear and answer before the proper court the accusation brought against" the accused; the term includes a bail bond or a personal bond. Code Crim. Proc. art. 17.01.

The opinion next considered whether a district clerk must deposit trust funds in separate accounts or in interest-bearing accounts. *Id.* at 3. It noted, initially, that chapter 117 of the Local Government Code does not expressly require a district clerk to place trust funds either in separate accounts or in interest-bearing accounts. *Id.* However, the clerk must comply with the instructions of the court that directed the clerk to hold the funds. *Id.* The opinion also noted that both the county auditor and county commissioners court have some discretionary authority to impose additional duties upon the district clerk in regard to the trust funds. *Id.* For example, section 112.002 of the Local Government Code authorizes a county auditor to mandate certain auditing procedures, perhaps including a requirement that the district clerk deposit trust funds in separate accounts. *Id.* Section 117.051 of the Local Government Code authorizes a commissioners court to require that trust funds be placed in "time deposits," which, according to Attorney General Opinion JM-1162, indicates that the commissioners court may require trust funds to be placed in interest-bearing accounts. *Id.* at 3-4.

This office also examined in Attorney General Opinion JM-1162 the question of whether a county is entitled to receive any interest that accrues on funds the district clerk maintains. Section 117.054(a) of the Local Government Code provides a county with a right to receive a part of the interest earned on trust funds placed in time deposits, but the county may receive no more than is "reasonably related to the accounting and administrative expenses" the county has incurred in handling the funds. *Id.* Section 117.054(b) authorizes the county auditor or county treasurer to deposit the amount of compensation into the county's general fund. *Id.*

Based upon Attorney General Opinion JM-1162, we conclude that the district clerk may deposit into a separate account cash paid in lieu of a bail bond if the court or another authority, such as the county auditor, orders the clerk to do so. The district clerk may deposit into an interest-bearing account cash paid in lieu of a bail bond if the court or another authority, such as the county commissioners court, orders the clerk to do so. If the district clerk deposits cash paid in lieu of a bail bond into an interest-bearing account, however, the county may not keep all of the accrued interest. Instead, except for a portion of the accrued interest that the county may keep pursuant to section 117.054 of the Local Government Code, the clerk must return to the depositor any interest that accrues on the cash.

You also ask about the disposition of interest received on inmate monies in a trust fund established in accordance with section 501.014 of the Government Code. Section 501.014 provides in relevant part as follows:

> (a) The director of the institutional division shall take possession of all money that an inmate has on the inmate's person when the inmate arrives at the institutional division and all money the inmate receives at the department after arriving at the division and shall credit the money to a trust fund created for the inmate. . . . The director of the institutional division may spend money from a trust fund on the written order of the inmate in whose name the fund is

established subject to restrictions on the expenditure established by
law or rule.

Section 501.014 applies only to the director of the institutional division of the Texas
Department of Criminal Justice (the "TDCJ"). *See* Gov't Code § 491.001(a)(3), (5)
(defining, for purposes of title 4, subtitle G of the Government Code, "department" and
"institutional division"). We have been advised by an employee of the TDCJ that money
the director of the institutional division obtains pursuant to section 501.014 is deposited
into the TDCJ's inmate trust fund, and that money in the TDCJ's inmate trust fund does
not accrue interest.

Section 501.014 is, therefore, wholly inapplicable to inmates in a county jail or
county correctional facility. We note that sections 351.041(a) and 351.182 of the Local
Government Code make the sheriff responsible for each of these county facilities. The
*Texas Commission on Jail Standards (the "commission") is authorized to promulgate rules*
governing county jails (including county correctional facilities) under section 351.002 of
the Local Government Code. *See also* 35 D. BROOKS, COUNTY AND SPECIAL DISTRICT
LAW § 20.50, at 732 (Texas Practice 1989). Regarding inmates in a county jail, the
commission has promulgated section 265.11 of title 37 of the Texas Administrative Code
which provides as follows:

> If an inmate is not going to be released, the receiving officer
> shall carefully record and store such of the inmate's property as is
> taken from him and issue the inmate a receipt, signed by the receiving
> officer and the inmate, to be kept in the inmate's file pending release.

*See* 37 T.A.C. §§ 265.6, 267.5, 269.1(3). No rule discusses the confiscation of property
with regard to inmates in a county correctional facility. We understand that inmates in
such a facility may retain possession of their personal property, including money.

No statute or rule discusses whether a sheriff may place an inmate's money into an
interest-bearing account or invest the money, or whether the sheriff simply may place the
money into a safe place for the duration of the inmate's stay.[3] *But see* Attorney General
Opinion JM-398 (1985) at 3 (stating that inmate's money remains in sheriff's custody
"where it may be deposited in an account that serves as a depository for all inmates[']
personal funds"). Because of the absence of statutory or regulatory direction, we believe
that each county sheriff, in the exercise of his or her discretion, may decide where to place
inmates' money for safekeeping. A sheriff may decide, therefore, to keep the money in a
cash deposit drawer or safe, a safe deposit box, or an account, either interest-bearing or
non-interest-bearing, or, if practicable, to invest the money. We caution, however, that
the sheriff's discretion may be limited by the county auditor, who "may adopt and enforce

---

[3]We understand that, in actuality, a receiving officer may place an inmate's money into a cash
deposit drawer, where the money does not, of course, accrue interest, or the receiving officer may have an
inmate's money deposited into an account which may be interest-bearing or non-interest-bearing.

regulations, . . . , that the auditor considers necessary for the speedy and proper collecting, checking, and accounting of the revenues and other funds and fees that belong to the county or to a person . . . for whose use or benefit the [precinct] officer holds or has received funds." Local Gov't Code § 112.002(b); *see* Attorney General Opinion JM-702 (1987) at 2 (inmate trust account subject to audit by county auditor); *see also* Local Gov't Code § 112.001; Attorney General Opinion JM-1162 (1990) at 3 (county auditor could require clerk to place trust funds in separate accounts).

Moreover, no statute or rule discusses whether, in the event that the sheriff places an inmate's money in an interest-bearing account or invests the money, the inmate is entitled to receive the interest his or her money has accrued, whether the sheriff's department may receive the interest, or whether the county may receive the interest. In part, the disposition of the interest depends on whether the sheriff holds the money in trust for the inmate. If so, the interest is property of and due to the inmate, who is the beneficiary of the trust fund. *See* 35 D. BROOKS, supra § 14.11, at 526. "A county's unilateral confiscation of the earned interest [on a trust fund] is an unconstitutional taking of property." *Id.*; *see also Harris County v. Sellers*, 483 S.W.3d 242, 243 (Tex. 1972) (and cases cited therein). The county may retain an amount reasonably related to the value of its services in safeguarding and investing the principal, however. *See Harris County*, 483 S.W.2d at 244. You indicate in your letter that the present policy of your county is to place the inmates' money into a trust fund. Consequently, except for an amount that the county may retain that is reasonably related to the value of the county's services in safeguarding and investing the inmate's money, the interest on the money is the property of the inmate and the county must pay it to the inmate.

## S U M M A R Y

The clerk of a district court may deposit into an account separate from the county's general account cash paid in lieu of a bail bond if the court or another authority orders the clerk to do so. Because cash paid in lieu of a bail bond is to be held in trust for the bailee unless the cash is forfeited, any interest that accrues on the cash during the time it is in the county's possession belongs to the bailee; the county may keep only a portion of the interest in accordance with section 117.054 of the Local Government Code.

The sheriff of a county may decide where to keep inmates' money for safekeeping. The sheriff's discretion is limited, however, by the county auditor, who may regulate the keeping of inmate funds as necessary for the purposes of collecting, checking, and accounting of revenues and other funds and fees belonging to an inmate. The disposition of any interest that accrues on an inmate's money during the inmate's incarceration in county jail depends on whether the money is held in trust for the inmate. If so, the inmate is entitled to the accrued interest, except for an amount reasonably related to the

values of services in safeguarding and investing the principal that the county may retain.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

JORGE VEGA
Deputy Attorney General for Litigation

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General